[No. 21438-5-II.   Division Two.   July 31, 1998.]

Manke Lumber Company, Inc., *Respondent*, v. James E. Diehl, *Defendant*, Western Washington Growth Management Hearings Board, et al., *Appellants*.

*Christine O. Gregoire, Attorney General,* and *Marjorie T. Smitch, Assistant*; and *Kevin W. Teague,* for appellants.

*William T. Lynn* and *Caroleen M. Dineen* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*; *Gary P. Burleson, Prosecuting Attorney for Mason County*, and *Eric Valley, Deputy*; *John C. McCullough* of *Phillips, McCullough, Wilson, Hill & Fikso, P.S.*; *Sarah W. Smyth*; *Alexander W. Mackie* of *Owens Davies Mackie*; and *Benjamin H. Settle* of *Settle & Johnson*, for respondent.

*Paul Hunter,* pro se.

*Bill Hunter, Jr.,* pro se.

*Jim Hunter,* pro se.

*Brent D. Boger* on behalf of Pacific Legal Foundation, amicus curiae.

*Elaine L. Spencer* on behalf of Building Industry Association of Washington, amicus curiae.

HUNT, J. — Appellants Kerry Holm, Gordon Jacobson, and Vern Rutter, and defendant John Diehl, individually, and as members of the Mason County Community Development Council (collectively MCCDC), filed a petition with the Western Washington Growth Management Hearings Board (the Board), contending that Mason County's Interim Resource Ordinance (IRO) did not comply with Washington's Growth Management Act (GMA). The Board agreed and remanded to the County to bring the IRO into compliance. Manke Lumber, one of several intervenors,[1] appealed to Mason County Superior Court that portion of the Board's decision relating to the designation of forest lands. The superior court reversed.

---

[1]The intervenors include: Peter Overton; Donald B. Payne; McDonald Land Company, et al.; Skookum Lumber Company; Mason County Private Property Alliance (MCPPA); City of Shelton, a municipal corporation; Paul Hunter and Bill Hunter, Jr., d/b/a Hunter Farms; and Jim Hunter, d/b/a/ Hunter Christmas Trees.

MCCDC and the Board appealed to this Court. MCCDC argues that: (1) the IRO fails to comply with the GMA because it does not properly designate and conserve forest lands of long-term commercial significance; and (2) the Board's finding of noncompliance is supported by substantial evidence. The Board argues that the superior court exceeded its authority in remanding to the Board with instructions to find GMA compliance. We agree with the superior court's ruling, reverse the Board's finding of GMA noncompliance, and remand to the Board.

## FACTS

The Legislature enacted the Growth Management Act[2] to minimize threats that uncoordinated and unplanned growth pose to the environment, economic development, and public welfare. RCW 36.70A.010. The GMA requires communities to coordinate comprehensive land use planning, and counties to adopt comprehensive land use plans and development regulations, in accordance with the GMA framework. RCW 36.70A.040. The Legislature left wide latitude to local governments to customize their comprehensive plans according to local growth patterns, resources, and needs. RCW 36.70A.010-901.

### A. Mason County's Designation of Commercial Forest Land

In an effort to comply with the GMA, Mason County (County) adopted an Interim Resource Ordinance, Ordinance 77-93, which, among other things,[3] designated forest lands of long-term commercial significance (LTCFL). Each county "shall" designate *where appropriate . . .* [f]orest lands that are not already characterized by urban growth and that have long-term significance for the commercial

---

[2]RCW 36.70A.010-902 (1990).

[3]This appeal relates solely to that portion of the IRO designating forest lands of long-term commercial significance.

production of timber." RCW 36.70A.170(1)(b) (emphasis added).

The County established the following criteria for determining which forest lands to designate as LTCFL:

A. CLASSIFICATION

The following criteria, as they existed on January 31, 1992, shall be used in classifying Long-Term Commercial Forest Lands:

1. Property tax classification: Property is enrolled, as of January 31, 1992 in the Open Space Timber or Designated Forest or Classified Forest property tax classification program pursuant to Chapter 84.33 or 84.34 RCW, or is owned by a state or local governmental body with long-term forest management as its primary use; and

2. Minimum block size is 5,000 acres (2015 hectares) which shall consists [sic] of a minimum parcel size of 80 acres within said block, and which can be in multiple ownerships [sic]; and

3. In any one block, no more than 5% is used for non-resource use; and

4. The property is greater than two (2) miles (3220 meters) from a sanitary sewer line; and

5. The property is greater than 2 miles (3220 meters) from the city limits of Shelton or outside any designated urban growth boundaries in Mason County, when so established by the County; and

6. 50% or more of an ownership parcel shall have a Douglas Fir Site Index of 118 (Land Grade 2) or better pursuant to WAC 458-40-530. In addition, those property owners who have more than 4000 acres of property within Mason County that meet that criterion, shall also include all properties with a Douglas Fir Site Index of 99 (Land Grade 3) or between pursuant to WAC 458-40-530; and

7. Greater than 50% of the linear frontage of the perimeter of any parcel meeting classification criteria 1-6 above shall abut parcels that are greater than five (5) acres (2.15 hectares).

8. In addition, the property that is equal to or greater than 40 acres in size, or is a Government Lot; and is contiguous with property under the same ownership that meet classification criteria 1-7 above.

9. In addition, property that is composed of one or more parcels 40 acres (16.12 hectares) or greater in size that borders United States Forest Service property on more than one side, irrespective of its consistency with classification criteria 1-8 above.

B. DESIGNATION

Lands of Mason County meeting the classification criteria for Long-Term Commercial Forest Land, and so specified on the official Mason County Map, available at the Mason County Planning Department, titled, "Mason County Long-Term Commercial Forest Lands and In-holding [inholding] Lands, 1991" or as thereafter amended, are hereby designated, under .RCW 36.70A.060 and RCW 36.70A.170, as conservation areas for forest resource lands of long-term commercial significance.

MASON COUNTY CODE (MCC) 17.01.060 (1993).

Applying the above criteria, the County designated as LTCFL, approximately: 200,000 privately owned acres; 141,140 acres of United States Forest Service land; 35,200 acres of National Park land; and 56,917 acres owned by DNR[4] for timber extraction. These designations represent approximately 64 percent of the County's acreage, excluding National Park land. If National Park land is included, approximately 70 percent of Mason County's acreage is designated forest land of long-term commercial significance.

B. Public Process Involved in Drafting and Adopting the IRO

The County began its process for adopting the IRO in April 1991; it continued for over two years. The County created the Growth Management Advisory Committee (GMAC), which comprised 27 individuals representing different

---

[4]Department of Natural Resources, State of Washington.

interests and geographical areas. Over the course of two years, the GMAC worked on drafts of the IRO and allowed citizen review and assistance in developing the County's growth management plan. This community work encompassed more than 125 public meetings.

The County also created a Resource Lands Subcommittee to work on LTCFL designations. This subcommittee included representatives from environmental groups, the timber industry, and the DNR; foresters; rural landowners; and individual citizens. Before the County adopted the IRO, it conducted: seventeen meetings of the Subcommittee on Resource Lands to consider resource lands issues and to draft and to revise the IRO's resource lands sections; twenty-three meetings of the GMAC during the IRO's development; thirteen workshop meetings; and five public hearings.

On August 3, 1993, the County adopted the IRO, effective October 1, 1993. Mason County Ordinance 77-93.

### C. Appellate Procedural History

#### 1. Growth Management Hearings Board

On July 14, 1995, MCCDC filed a petition with the Board, challenging the sufficiency of various provisions of the IRO as inadequate under the GMA. The instant appeal, however, is limited to that portion of the IRO designating LTCFL. Regarding the lands designated LTCFL, MCCDC alleged that the IRO did not comply with RCW 36.70A.060, RCW 36.70A.170, and WAC 365-190-060 because it failed to classify and to designate *all* long-term commercial forest lands required to be conserved as resource lands. MCCDC argued that the IRO criteria for designating LTCFL were so narrowly drawn that large areas of land were improperly excluded from LTCFL designation. But MCCDC failed to identify any particular parcel of land that was inappropriately excluded from LTCFL designation as a result of the County's criteria.

Nonetheless, the Board concluded that the IRO violated

the GMA because: "Some forest land of long-term commercial significance was unjustifiably excluded . . . ." The Board gave four reasons to support this conclusion: (1) petitioners "contended[5] that the County mapped forest land ownership before deciding what criteria would be used and what would be included as forest land of long-term commercial significance . . . ." and "[t]his Board has previously held that first establishing a desired outcome and then developing data or criteria to support that outcome does not meet the test of a reasoned decision based on appropriate factors." (2) "Making participation in the tax program a prerequisite for forest land designation effectively leaves the designation decision to the land owners. This does not comply with GMA." (3) 5,000 acre size was not an appropriate threshold because the "exclusionary characteristic of the criterion" overlooked "the fact that blocks smaller than 5,000 acres *may well be* commercially-significant forest land in productivity and need the same kinds of protections afforded the larger blocks." (4) The setbacks recommended by the local GMAC of 150 feet from property lines of designated long-term commercial forest land were deleted, the inholding land designations were not. Since the "setbacks were not included in the Interim Resources Ordinance (IRO) and inholdings remained," conflicting uses would be exacerbated.

The Board remanded the IRO to the County, with

---

[5]MCCDC claims that this *contention* is supported by minutes from a Resource Lands Subcommittee's meeting:

Regarding the Long-term Commercial Forest Land Classification system for mapping, the committee agreed to base a new map on criteria 7 as follows:

50% or more of an ownership parcel shall have a soils Site Index of 118 or better pursuant to WAC 458-40-530. In addition, those property owners who have more than (1000, 5000, 10000?) acres of property within Mason County that meet that criterion, also shall include all properties with a soils Site Index of 99 or better pursuant to WAC 458-40-530.

They also asked Daniel to use his judgment in developing a map that most closely approximates the committee's intentions as expressed in a working map of the committee. He will come up with quantitative criteria that best matched the map.

instructions to bring it into compliance with the GMA. On February 22, 1996, the Board denied motions for reconsideration filed by Mason County, Peter Overton et al., and Manke Lumber. The Board concluded, "Petitioners showed by a preponderance of evidence that exclusionary criteria existed which allowed land, required by the Act to be designated, to fail to be designated. These agriculture and forestry designation criteria do not comply with the Act."

2. Mason County Superior Court

On March 21, 1996, intervenor Manke Lumber appealed to the Mason County Superior Court for judicial review, challenging that portion of the Board's decision relating to LTCFL designation. The superior court ordered that the record be shortened to include materials relevant to the IRO's LTCFL designation.

The superior court concluded that: the Board failed to apply the presumption of validity to the IRO; the petitioners did not present sufficient evidence to overcome the presumption of validity; and Mason County complied with the GMA when it adopted the IRO's designation of LTCFL. The superior court reversed and remanded to the Board for further proceedings consistent with its decision.

3. Court of Appeals

On appeal MCCDC argues that (1) the IRO fails to comply with the GMA because it does not properly designate and conserve forest lands of long-term commercial significance, and (2) the Board's finding of noncompliance is supported by substantial evidence. The Board argues that the superior court exceeded its authority in remanding to the Board with instructions to find GMA compliance.

ANALYSIS
A. Standard of Review

We review the Board's decision from the same vantage point as the trial court, applying Administrative

Procedure Act[6] (APA) standards directly to the record before the Board. *King County v. Central Puget Sound Growth Management Hearings Bd.*, 91 Wn. App. 1, 12, 951 P.2d 1151 (1998). The APA allows a court to grant relief from "an agency order in an adjudicative proceeding" only if the court determines that the order: (1) is unconstitutional; (2) exceeds the agency's statutory authority or jurisdiction; (3) is the result of unlawful procedure or decision-making process; (4) erroneously interprets or applies the law; (5) is not supported by evidence that is substantial when viewed in light of the whole record; (6) does not contemplate all issues requiring resolution; or (7) is arbitrary or capricious. RCW 34.05.570(3); *see also King County*, 91 Wn. App. at 12. Here, the Board's ruling that the IRO did not comply with the GMA was "an agency order in an adjudicative proceeding," reviewable under RCW 34.05.570(3). Although we review legal conclusions de novo, we also give substantial weight to the agency's interpretation of the statutes it administers. *Weyerhaueuser Co. v. Department of Ecology*, 86 Wn.2d 310, 315, 545 P.2d 5 (1976). Nonetheless, here, the Board's order is not supported by evidence sufficient to overcome the IRO's presumption of validity.

## B. Review of the Board's Order

### 1. Did the Board Misinterpret or Misapply the GMA?

The Board is charged with hearing and determining petitions alleging that a state agency, county, or city plan is not in compliance with the GMA. RCW 36.70A.280. The Board, "shall base its decision on the record developed by the city, county, or the state and supplemented with additional evidence if the board determines that such additional evidence would be necessary or of substantial assistance to the board in reaching its decision." RCW 36.70A.290(4).[7]

---

[6]RCW 34.05.010-.902.

[7]Here, the record before the Board was limited to evidence provided by the County and was not supplemented during the Board proceedings.

### a. *IRO's Presumption of Validity Under GMA*

When reviewing petitions alleging noncompliance with the GMA, the Board must presume the validity of "comprehensive plans and development regulations" and "shall find compliance unless it finds by a preponderance of the evidence that the . . . county . . . erroneously interpreted or applied this chapter."[8] RCW 36.70A.260. *See also* WAC 365-195; WAC 242-02-632. "Development regulations" include:

> the controls placed on development or land use activities by a county or city, including, but not limited to, zoning ordinances, critical areas ordinances, shoreline master programs, official controls, planned unit development ordinances, subdivision ordinances, and binding site plan ordinances together with any amendments thereto.

RCW 36.70A.030(7).

■ Here, the County's designation of LTCFL could be considered a "development regulation" or an interim component of the County's comprehensive plan, either of which the Board was required to presume valid.

### b. *County's Broad Discretion Under GMA*

■ The GMA directs counties and cities to determine what land is "primarily devoted to . . . long-term commercial timber production . . . ." RCW 36.70A.030(8). The GMA confers broad discretion on local governments making this determination. The Washington State Growth Strategies Commission's chair, in a cover letter, explained to Governor Gardner the rationale for conferring discretion on local governments as follows: "[O]ur strategy's success rests primarily on planning decisions being made at the local level and those plans being given a presumption of validity." "The Commission believes the foundation blocks of a statewide growth strategy are local governments. Locally elected officials working with their citizenry are best able to tailor broad growth policies to their communities." FINAL

---

[8]In 1997, the Legislature amended this burden. Under the current law, petitioners must prove that the local government's plan or regulation is clearly erroneous. LAWS OF 1997, ch. 429, § 20(3).

REPORT OF THE WASHINGTON STATE GROWTH STRATEGIES COMMIS-
SION, A GROWTH STRATEGY FOR WASHINGTON STATE, at 4 (Sept.
1990).

> The state should play a critical role in assisting local govern-
> ments and regional organizations in carrying out its growth
> strategy. As part of that role the state should develop
> guidelines and regulations and provide technical assistance for
> planning and implementing all aspects of growth legislation.
> However, the state should facilitate rather than dictate local
> comprehensive planning, and should speed up rather than
> slow down its process. The state should not become an
> unwieldy layer of review and approval, but a facilitator and an
> arbiter for local government.

FINAL REPORT, at 15.

In 1997, the Legislature reiterated its intention that,
within the general GMA framework, local governments as-
sume broad discretion in developing specific comprehensive
plans tailored to local circumstances:

> In recognition of the broad range of discretion that may be
> exercised by counties and cities consistent with the require-
> ments of this chapter, *the legislature intends for the boards to
> grant deference to counties and cities in how they plan for
> growth*, consistent with the requirements and goals of this
> chapter. Local comprehensive plans and development regula-
> tions require counties and cities to balance priorities and op-
> tions for action in full consideration of local circumstances.
> The legislature finds that while this chapter requires local
> planning to take place within a framework of state goals and
> requirements, *the ultimate burden and responsibility for plan-
> ning, harmonizing the planning goals of this chapter, and
> implementing a county's or city's future rests with that com-
> munity.*

RCW 36.70A.3201 (emphasis added).

c. *GMA Criteria for Designating LTCFL*

The GMA sets forth objectives and minimum guidelines
that local governments must follow when classifying land.
"Forest land" is defined as "land primarily devoted to

growing trees for long-term commercial timber production on land that can be economically and practically managed for such production . . . and that has long-term commercial significance." RCW 36.70A.030(8). "Long-term commercial significance" includes "the growing capacity, productivity, and soil composition of the land for long-term commercial production, in consideration with the land's proximity to population areas, and the possibility of more intense uses of the land." RCW 36.70A.030(10).

In determining whether forest land is "primarily devoted to growing trees for long-term commercial timber production," local governments "shall" consider:

(a) The proximity of the land to urban, suburban, and rural settlements; (b) surrounding parcel size and the compatibility and intensity of adjacent and nearby land uses; (c) long-term local economic conditions that affect the ability to manage for timber production; and (d) the availability of public facilities and services conducive to conversion of forest land to other uses.

RCW 36.70A.030(8).

Guidelines for further classification of forest lands are codified at WAC 365-195-060. The GMA provides that these *"minimum* guidelines" apply to all jurisdictions, but also "shall allow for regional differences that exist in Washington state. The intent of these guidelines is to assist counties and cities in designating the classification of . . . forest lands . . . ." RCW 36.70A.050 (emphasis added).

The WAC guidelines for designating forest lands provide:

In classifying forest land, counties and cities should use the private forest land grades of the department of revenue (WAC 458-40-530). This system incorporates consideration of growing capacity, productivity and soil composition of the land. Forest land of long-term commercial significance will generally have a predominance of the higher private forest land grades. However, the presence of lower private forest land grades within the areas of predominantly higher grades need not preclude designation as forest land.

Each county and city shall determine which land grade con-

stitutes forest land of long-term commercial significance, based on local and regional physical, biological, economic, and land use considerations.

Counties and cities shall also consider the effects of proximity to population areas and the possibility of more intense uses of the land as indicated by:

(1) The availability of public services and facilities conducive to the conversion of forest land.

(2) The proximity of forest land to urban and suburban areas and rural settlements: Forest lands of long-term commercial significance are located outside the urban and suburban areas and rural settlements.

(3) *The size of the parcels: Forest lands consist of predominantly large parcels.*

(4) The compatibility and intensity of adjacent and nearby land use and settlement patterns with forest lands of long-term commercial significance.

(5) *Property tax classification: Property is assessed as open space or forest land pursuant to chapter 84.33 or 84.34 RCW.*

(6) Local economic conditions which affect the ability to manage timberlands for long-term commercial production.

(7) History of land development permits issued nearby.

WAC 365-190-060 (emphasis added).

d. *Board's Finding of Noncompliance*

The Board determined that certain criteria used to designate LTCFL under the County's IRO did not comply with the GMA or the WAC minimum guidelines because: (1) the County mapped land ownership before promulgating criteria for designating forest land of long-term commercial significance; (2) the County limited designation as LTCFL to parcels over 5,000 acres; and (3) the County made tax classification a criteria for designating LTCFL. The Board concluded that application of these criteria resulted in improper exclusion of forest land from LTCFL designation. We apply the above WAC guidelines to Mason County's

IRO and conclude that the record does not support the Board's finding of noncompliance.

i. Land Maps

The minimum guidelines require counties to map natural resource land when making designation determinations. WAC 365-190-040(2)(b)(vii). To satisfy this guideline, the Resource Lands Subcommittee and the County considered several maps throughout the process of developing the IRO.

MCCDC contends that the County mapped the ownership of land and *then* established LTCFL designation criteria based on the map. MCCDC's sole evidentiary support for this contention is the record of the twelfth meeting of the Resource Lands Subcommittee. This meeting took place after the minimum guidelines had been incorporated and draft criteria developed. The record reflects that the County began developing designation criteria before the Resource Lands Subcommittee was even formed. Thus MCCDC's contention that the County improperly based designation criteria on this map is not supported by the record.

Viewed in light of the whole record, the Board's finding that the County improperly established a desired outcome and then developed criteria to support that outcome is not supported by substantial evidence. RCW 34.05.570(3).

ii. Parcel Size

■ The Board misapplied the GMA when it determined that the County could not limit LTCFL designations to parcels greater than 5,000 acres. Because circumstances vary from county to county, minimum guidelines provide simply that counties may consider the "size of the parcels." The guidelines also note the expectation that "[f]orest lands consist of predominantly large parcels." WAC 365--190-060(3).

The County did not violate these minimum guidelines when it specified a threshold size for determining what parcels were large enough to be considered LTCFL land. We hold that the Board misinterpreted the GMA in conclud-

ing that Mason County could not establish a minimum parcel size of 5,000 acres when designating forest land of long-term commercial significance.

iii. Tax Classification

■ The Board also misinterpreted the GMA when it concluded that the County could not make property tax classification a criteria for LTCFL designation. The WAC guidelines specifically allow counties to consider tax classification. WAC 365-190-060(5). The Board's concern, that individuals might avoid LTCFL designation by opting into a certain tax classification, is misplaced. The IRO relates back to tax classifications made as of January 31, 1992, thus precluding landowners' circumvention of LTCFL designations by changing their tax classifications after the October 1, 1993, effective date of the IRO.

2. Did the IRO Unjustifiably Exclude Land that Should Be Designated as LTCFL?

■ The Board's finding that the County unjustifiably excluded LTCFL property is not supported by substantial evidence when viewed in light of the whole record. RCW 34.05.570(3). MCCDC fails to identify any parcel of land that was improperly excluded from LTCFL designation.

The WAC guidelines specifically provide, inter alia, that the County:

shall also consider the effects of proximity to population areas and the possibility of more intense uses of the land as indicated by:

. . . .

2) The proximity of forest land to urban and suburban areas and rural settlements: Forest lands of long-term commercial significance are located outside the urban and suburban areas and rural settlements . . .

. . . [and]

4) The compatibility and intensity of adjacent and nearby

land use and settlement patterns with forest lands of long-term commercial significance.

WAC 365-190-060(2) and (4), respectively.

The only property MCCDC identified to the Board as improperly excluded from LTCFL designation were blocks of property on Hartstene Island. Hartstene Island is long and narrow; all of the land lies close to shoreline areas, developed with small waterfront lots. The Hartstene Island blocks identified by MCCDC are surrounded by developments whose densities range from urban to suburban to rural. Thus the record demonstrates that the County properly excluded the Hartstene Island land from LTCFL designation.

MCCDC failed both to overcome the IRO's presumption of validity and to meet its burden of proof that any excluded land, on Hartstene Island or elsewhere, should have been designated as LTCFL. We therefore hold that the Board erroneously interpreted and applied the GMA based on reasons not supported in the evidence, contrary to RCW 34.05.570(3).

3. Did the Superior Court Exceed its Authority?

RCW 34.05.574(1) sets forth the relief the court may grant under the APA. The court may: "order an agency to take action required by law, order an agency to exercise discretion required by law, set aside agency action, enjoin or stay the agency action, remand the matter for further proceedings, or enter a declaratory judgment order."

■ We agree with the Board that the superior court lacked authority to find the County's IRO in compliance with the GMA. RCW 34.05.574(1) specifically provides that:

In reviewing matters within agency discretion, the court shall limit its function to assuring that the agency has exercised its discretion in accordance with law, and shall not itself undertake to exercise the discretion that the legislature has placed in the agency. The court shall remand to the agency for modification of agency action, unless remand is impractical or would cause unnecessary delay.

Even though the superior court in part usurped the Board's role of determining GMA compliance, the superior court nevertheless properly remanded to the Board for further proceedings consistent with its opinion.

Moreover, because we review the Board's order directly, rather than review the superior court acting in its separate appellate capacity, the superior court's ruling has caused no prejudice to the Board.

## CONCLUSION

We vacate that portion of the Board's order of January 8, 1996, finding the County's IRO LTCFL designation not in compliance with the GMA, and remand to the Board for further proceedings consistent with this opinion.

HOUGHTON, C.J., and MORGAN, J., concur.

Reconsideration denied September 1, 1998.

Review denied at 137 Wn.2d 1018 (1999).