[No. 35569-8-II. Division Two. October 16, 2007.]

FUTUREWISE ET AL., *Appellants*, v. THE CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD ET AL., *Respondents*.

Keith P. Scully (of Futurewise) and Alexandria K. Doolittle, for appellants.

Robert M. McKenna, Attorney General, and Martha P. Lantz, Assistant; and Gerald A. Horne, Prosecuting Attorney for Pierce County, and M. Peter Philley, Deputy, for respondents.

¶1 QUINN-BRINTNALL, J. — Futurewise and Friends of Pierce County (Futurewise) appeal the decision of the

Central Puget Sound Growth Management Hearings Board (Board) upholding Pierce County Code (PCC) 19A.30-.070(B) (3)(a). In 2004, the Pierce County Council enacted that ordinance, which declares that parcels of land smaller than five acres are not significant agricultural lands of long-term significance that must be conserved under the Washington Growth Management Act (GMA), chapter 36.70A RCW.

¶2 Futurewise challenged the ordinance, claiming that the five-acre minimum parcel size is premised on a factual error about soil mapping data and an incorrect application of the GMA definition. We agree that the soil mapping data does not support the five-acre minimum parcel size. But the council's decision does not rest solely on this erroneous basis and we hold that Pierce County correctly applied the statutory and regulatory definitions of agricultural land of long-term significance. Accordingly, we affirm.

## FACTS

¶3 Two of the GMA's goals are to protect natural resource land from uncontrolled urban growth and to encourage robust natural resource industries on suitable land. RCW 36.70A.020(1), (2), (8). To achieve these goals, the GMA requires that Pierce County (1) determine what land meets the definition of natural resource land and then (2) adopt a comprehensive plan and development regulations to protect and preserve this natural resource land. RCW 36.70A.040. One type of natural resource land is "agricultural land of long-term commercial significance." RCW 36.70A.020(8), .060(1)(b).

¶4 Pierce County amended its comprehensive plan in 2004. PCC 19A.30.070. As relevant here, the county redefined "agricultural lands of long-term commercial significance," requiring protection and preservation under the GMA. PCC 19A.30.070(B)(3). The county concluded that plots of land smaller than five acres do not fulfill the definition and are exempt from GMA preservation requirements. PCC 19A.30.070.

¶5 An important factor in identifying agricultural land is the soil's agricultural suitability. Pierce County explicitly reasoned that soil maps are unreliable for plots smaller than five acres and such plots should be excluded from the definition. PCC 19A.30.070. But the PCC also allows land owners and community members to petition the county to designate specific plots smaller than five acres for equivalent status as agricultural lands of long-term significance. PCC 19A.40.070.

¶6 Futurewise challenged PCC 19A.40.070, arguing that the five-acre minimum parcel size is erroneous. The Board disagreed and held that the ordinance complies with the GMA. The Board reasoned:

> [T]he County's use of a minimum parcel size of five acres is within its discretion, neither the Act nor the [Washington Department of Community, Trade, and Economic Development (CTED)] criteria [in WAC 365-190-050] require or prohibit minimum parcel sizes. Futurewise urged the County not to use the five acre minimum parcel size[ ] because in 2002, 527 farms (35.75%) in Pierce County were between 1 and 9 acres, with the average *small size farm* being 4.5 acres. Also, Futurewise contends that the parcel size cut-off excludes farms made up of many small parcels of land or small parcels associated with larger farms. The County shows that the *average farm size* in the County is 39 acres and the *median farm size* is 20 acres and that 88% of the area designated as [Agricultural Resource Lands (ARLs)] are parcels less than 30 acres in size. Further, the County's stated rationale for the five acre parcel minimum was that this size correlated well to the accuracy[, i.e., scale,] of the soil maps as explained in the Soil Survey Manual. The County did not err by including a minimum lot size as part of its ARL designation criteria.

Suppl. Administrative R. (AR) at 2336 (citations omitted). In short, the Board held that the five-acre minimum is valid because it correlates to (1) soil sample accuracy and (2) predominant parcel size. Futurewise appealed to the superior court, which affirmed the Board's decision.

¶7 This appeal requires that we consider whether Pierce County properly analyzed soil mapping data to set a mini-

mum size and, if not, whether it was nevertheless justified in setting the five-acre minimum parcel size because the minimum correlated to another GMA criterion: predominant parcel size.

## ANALYSIS

STANDARD OF REVIEW

■ ¶8 The Board is charged with adjudicating GMA compliance and invalidating noncompliant plans and development regulations. RCW 36.70A.280, .302. The Board "shall find compliance" unless it determines that a county's action "is clearly erroneous in view of the entire record before the board and in light of the goals and requirements" of the GMA. RCW 36.70A.320(3). To find an action "clearly erroneous," the Board must have a "firm and definite conviction that a mistake has been committed." *Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County*, 121 Wn.2d 179, 201, 849 P.2d 646 (1993), *aff'd*, 511 U.S. 700, 114 S. Ct. 1900, 128 L. Ed. 2d 716 (1994).

■ ¶9 The legislature directed the Board "to grant deference to counties and cities in how they plan for growth, consistent with the requirements and goals of" the GMA. RCW 36.70A.3201. But while the Board must defer to Pierce County's choices that are consistent with the GMA, the Board itself is entitled to deference in determining what the GMA requires. Thus, we give "substantial weight" to the Board's interpretation of the GMA. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000) (*Soccer Fields*).

■ ¶10 On appeal, we review the Board's decision, not the superior court decision affirming it. *Soccer Fields*, 142 Wn.2d at 553. And we apply the standards of the Administrative Procedure Act (APA), chapter 34.05 RCW, directly to the record before the Board. *Soccer Fields*, 142 Wn.2d at 553 (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)).

¶11 Under the APA, a court shall grant relief from an agency's adjudicative order if it fails to meet any of nine standards delineated in RCW 34.05.570(3). Here, Futurewise asserts that it is entitled to relief because (1) substantial evidence does not support the Board's order and (2) the Board erroneously interpreted and applied the law. Futurewise argues that "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court," warranting relief under RCW 34.05.570(3)(e). Substantial evidence is that sufficient " 'to persuade a fair-minded person of the truth or correctness of the order.' " *Ferry County v. Concerned Friends of Ferry County*, 155 Wn.2d 824, 833, 123 P.3d 102 (2005) (internal quotation marks omitted) (quoting *Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 96 Wn. App. 522, 526, 979 P.2d 864 (1999)).

[5, 6] ¶12 Futurewise also argues that "[t]he agency has erroneously interpreted or applied the law," warranting relief under RCW 34.05.570(3)(d). The burden of demonstrating that the Board erroneously applied the law or failed to follow prescribed procedure is on the party asserting error: Futurewise. *Soccer Fields*, 142 Wn.2d at 553. We review issues of law under RCW 34.05.570(3)(d) de novo. *Thurston County v. Cooper Point Ass'n*, 148 Wn.2d 1, 8, 57 P.3d 1156 (2002).

DEFINING "AGRICULTURE" UNDER THE GMA

¶13 Under the GMA, Pierce County must designate "[a]gricultural lands that are not already characterized by urban growth and that have long-term significance for the commercial production of food or other agricultural products." RCW 36.70A.170(1)(a). If land fits within the definition of agricultural land of long-term significance set out in RCW 36.70A.170(1)(a), Pierce County must adopt development regulations "to assure the conservation of" that land. RCW 36.70A.060(1)(a).

¶14 The GMA mandates that counties apply the correct definition of "agricultural land" designated as having "long-

term significance." *Lewis County v. W. Wash. Growth Mgmt. Hearings Bd.*, 157 Wn.2d 488, 498, 139 P.3d 1096 (2006). "Agricultural land" under the GMA is land that (1) is not already characterized by urban growth, (2) is "primarily devoted to" commercial agricultural production, and (3) has "long-term commercial significance" for such production. *Lewis County*, 157 Wn.2d at 502 (citing RCW 36.70A-.030(2)).[1] The question for us then is whether, under this definition, Pierce County properly defined agricultural land of long-term significance to exclude parcels smaller than five acres.

¶15 The legislature defined "long-term commercial significance" as follows:

> "Long-term commercial significance" includes the growing capacity, productivity, and soil composition of the land for long-term commercial production, in consideration with the land's proximity to population areas, and the possibility of more intense uses of the land.

RCW 36.70A.030(10). CTED refined this definition in the following regulation:

> (1) In classifying agricultural lands of long-term significance for the production of food or other agricultural products, counties and cities *shall use the land-capability classification system of the United States Department of Agriculture* [(USDA)] *Soil Conservation Service as defined in Agriculture Handbook No. 210.* These eight classes are incorporated by the [USDA] into map units described in published soil surveys. These categories incorporate consideration of the growing capacity, productivity and soil composition of the land. *Counties and cities shall also consider the combined effects of proximity to*

---

[1] RCW 36.70A.030(2) reads:

"Agricultural land" means land *primarily devoted to the commercial production* of horticultural, viticultural, floricultural, dairy, apiary, vegetable, or animal products or of berries, grain, hay, straw, turf, seed, Christmas trees not subject to the excise tax imposed by RCW 84.33.100 through 84.33.140, finfish in upland hatcheries, or livestock, and *that has long-term commercial significance for agricultural production.*

(Emphasis added.)

*population areas and the possibility of more intense uses of the land as indicated by*:

(a) The availability of public facilities;

(b) Tax status;

(c) The availability of public services;

(d) Relationship or proximity to urban growth areas;

(e) Predominant parcel size;

(f) Land use settlement patterns and their compatibility with agricultural practices;

(g) Intensity of nearby land uses;

(h) History of land development permits issued nearby;

(i) Land values under alternative uses; and

(j) Proximity of markets.

WAC 365-190-050 (emphasis added). Counties may use the regulation to determine whether land has "long-term commercial significance." *Lewis County*, 157 Wn.2d at 502. Neither the GMA nor the CTED regulations prioritize these 10 factors. Therefore, a county has discretion regarding how to apply them. *Lewis County*, 157 Wn.2d at 502 n.11.

AUTHORITY TO SET MINIMUM PARCEL SIZE

¶16 Futurewise argues that a county may not set a minimum parcel size for agricultural lands. The county contends that because there is no legislative or agency prohibition on a county setting a minimum or maximum agricultural parcel size, it is free to set any minimum parcel limit it chooses. We reject Pierce County's assertion on appeal that it may set a minimum parcel size for any reason it chooses.

 ¶17 The absence of a specific legislative or agency prohibition does not grant counties unfettered discretion in setting parcel sizes. Our Supreme Court has held that a county may designate a minimum parcel size for certain land type designations so long as the limitation is consistent with GMA and with CTED principles, if the county chooses to apply WAC 365-190-050. *Lewis County*, 157

Wn.2d at 502 (citing with approval *Manke Lumber Co. v. Diehl*, 91 Wn. App. 793, 807-08, 959 P.2d 1173 (1998) (holding that a county may set a minimum parcel size based on the factors in WAC 365-190-050), *review denied*, 137 Wn.2d 1018 (1999)).

¶18 As interpreted by case law, a county may set a minimum or maximum parcel size if that result is warranted by a correct application of the GMA definitions set forth above. For example, in *Manke*, the Court of Appeals affirmed the setting of a minimum parcel size of 5,000 acres for long-term commercial forest land. 91 Wn. App. at 807-08. Based on two WAC 365-190-050 factors, predominant parcel size and tax status, Mason County had properly determined that forest land parcels smaller than 5,000 acres did not have "long-term commercial significance." *Manke*, 91 Wn. App. at 807-08. A county's decision to set a minimum parcel size is valid only if the county correctly applied the GMA definition of "agriculture" and the CTED regulations.

SOIL TYPE

¶19 Futurewise contends that the Board erred in finding that "the five acre parcel minimum . . . correlated well to the accuracy[, i.e., scale,] of the soil maps as explained in the Soil Survey Manual." Suppl. AR at 2336. Futurewise asserts that Pierce County reasoned that *parcels* under five acres did not satisfy the definition of "agricultural" because the USDA soil samples were not accurate for *soil-mapping units* under five acres. This is an issue of fact, and we review it to determine whether the fact is supported by evidence sufficient to persuade a fair-minded person of its truth. *Ferry County*, 155 Wn.2d at 833.

¶20 Pierce County articulated its reason for the five-acre limit: "The threshold size used as a basis for the designation of Agricultural Resource Lands is 5 acres or larger in size because soils data is most reliable at this size." PCC 19A.30.070(B)(3)(a)(1). The Pierce County Planning and Land Services Department also issued a memorandum

entitled "Explanation and Rationale for Designating Agricultural Lands in Pierce County." 2 AR at 1358. In that memorandum's "Soil Designation Criteria" section, the planners explained:

[The Planning and Land Services Department] chose to consider parcels that are five acres or larger in size based on the purity of map units explained in the Soil Survey Manual. Due to the minimum delineation size by map scale, soil class is more accurately determined using a scale 1:24,000 (approximately five acres).

2 AR at 1367.[2]

■ ■ ¶21 Futurewise claims that these map units are not sufficient to support Pierce County's decision to exclude parcels smaller than five acres from its agricultural lands of long-term significance designation. We agree. These map units are geographic and do not correlate to parcels. "Agriculture Handbook No. 210"[3] defines a "soil-mapping unit" as

a portion of the landscape that has similar characteristics and qualities whose limits are fixed by precise definitions. Within the cartographic limitations and considering the purpose for which the map is made, the soil mapping unit is the unit about which the greatest number of precise statements and predictions can be made.

NATURAL RES. CONSERVATION SERV., U.S. DEP'T OF AGRIC., NATIONAL SOIL SURVEY HANDBOOK NO. 210, Ex. 622-2, Tbl. 1 (reprint Jan. 1973) (Sept. 1961), *available at* http://soils.usda.gov/technical/handbook/contents/part622.html (last visited Aug. 6, 2007). This definition makes clear that a soil-mapping unit bears no relationship to land parcels, which are typically

---

[2] The memorandum also notes under "Predominant parcel size" that

[t]he proposal identifies only parcels five acres or larger to be included in the [Rural Farm (RF)] and [Valley Farm (VF)] designations. The predominant parcel size for both VF and RF designations is between 5 and 30 acres.

2 AR at 1362. The significance of this note is discussed in the section entitled "Predominant Parcel Size," *infra*.

[3] WAC 365-190-050(1) requires counties to "use the land-capability classification system of the [USDA] Soil Conservation Service as defined in Agriculture Handbook No. 210" when classifying agricultural lands of long-term significance for agriculture.

carved out in roughly rectangular shapes along access roads without regard to whether the landscape has "similar characteristics and qualities . . . about which the greatest number of precise [geological] statements and predictions can be made." Agriculture Handbook No. 210, *supra*, Ex. 622-2, Tbl. 1. Even if a soil-mapping unit smaller than five acres provides unreliable data, that unit would not correlate to a parcel. A 4-acre parcel could be located in a 300-acre mapping unit while a 300-acre parcel could be comprised of many 4-acre mapping units. Thus, the map units' reliability does not support the setting of a minimum parcel size. It is a logical fallacy to set a five-acre minimum parcel size based on the purported reliability of natural geographic mapping units.

¶22 Perhaps more important, the record contains no evidence that a soil-mapping unit smaller than five acres provides unreliable soil data. A thorough review of the USDA *Soil Survey Manual*, upon which the Planning and Land Services Department based its recommendation, does not support this claim. Instead, smaller soil-mapping units appear to be more, not less, reliable indicators of soil type because soil mappers take only small core samples from map units and use these to characterize the soil in the entire area designated. It appears that the smaller the mapping unit, the more representative the core sample is likely to be.

¶23 Moreover, we note that the Planning and Land Services Department did not base its recommendation for a five-acre minimum on the reliability of the data, as the challenged language in the ordinance implies. Its recommendation was based on the fact that the soil maps the Planning and Land Services Department uses are on a scale of 1:24,000.[4] The Planning and Land Services Department had

---

[4] "[The Planning and Land Services Department] chose to consider parcels that are five acres or larger in size based on the purity of map units explained in the Soil Survey Manual. Due to the minimum delineation size by map scale, soil class is more accurately determined using a scale 1:24,000 (approximately five acres)." 2 AR at 1367.

good reason to choose that map scale. Most soil mappers use a scale of 1:24,000. SOIL SURVEY DIV. STAFF, U.S. DEP'T OF AGRIC., SOIL SURVEY MANUAL ch. 4, at 2, "Selecting Mapping Scale" (Oct. 1993), *available at* http://soils.usda.gov/technical/manual/. The USDA considers this scale "detailed" and recommends that scale for community planners. SOIL SURVEY MANUAL, *supra*, ch. 6, at 4, "Areal Generalization."

¶24 And this map scale is easier to read. Using words and pictures, the *Soil Survey Manual* guides users by explaining the accuracy of different soil map sizes. For a 1:24,000 scale map, it indicates that the "minimum size delineation," or "the smallest area in which a symbol can be printed readily," is 5.7 acres. 2 AR at 1900. "Smaller areas can be delineated, and the symbol lined in from the outside; but such small delineations reduce map legibility." 2 AR at 1900. To demonstrate the minimum size delineation, the manual presents figure 2-4, showing the same map at different scales. SOIL SURVEY MANUAL, ch. 2, at 3. At a scale of 1:31,680, which is smaller print than the 1:24,000 standard size, mapping units as small as 0.1 acre are readable and clearly delineated with a line pointing to the mapping unit.

¶25 In short, a map scale finer than that the county chose to use renders the map less readable but does not affect reliability; the smaller scale only results in the symbol for mapping units under five acres to be located slightly outside the unit and indicated by a line. This reason does not support the wholesale exclusion of all parcels under five acres from the definition of "agricultural land of long-term commercial significance." As set out above, even if the small mapping units were inaccurate (the ordinance's stated basis for setting parcel size), the mapping units do not correlate to parcels (one of the Board's stated bases for upholding the size restriction). Thus, this evidence does not support the Board's finding that "the five acre parcel minimum . . . correlated well to the accuracy [i.e., scale] of the soil maps as explained in the Soil Survey Manual." Suppl. AR at 2336. Accordingly, we hold that the Board erred when it held that the minimum five-acre parcel size

correlates to soil sample accuracy and that substantial evidence supported Pierce County's setting of the parcel limit on this basis.

PREDOMINANT PARCEL SIZE

¶26 But Pierce County points out that other evidence before its legislative body (Council) supports its five-acre minimum. We agree that the record contains other evidence sufficient to support the county's decision to limit "agricultural lands of long-term commercial significance" to parcels larger than five acres.

■ ¶27 The record before the Council contains reports on the predominant parcel sizes for small farms in Pierce County. It establishes that small farms are generally between 5 to 30 acres. Under WAC 365-190-050(1)'s factor (e), the predominant parcel size is instructive on whether land has "long-term commercial significance" for agriculture.

¶28 In *Manke*, 91 Wn. App. at 807-08, we upheld a 5,000-acre minimum parcel size for forest land with "long-term commercial significance" because Mason County found WAC 365-190-050's factors of predominant parcel size and tax status warranted the setting of that minimum size. In *Lewis County*, 157 Wn.2d at 502, our Supreme Court expressly approved of *Manke* and agreed that, using these factors, counties have discretion regarding how to apply the regulation.

¶29 Similarly, Pierce County had discretion to set a minimum parcel size based on the 10 factors listed in WAC 365-190-050, including the factor of predominant parcel size. No one factor predominates over another. In other words, based on these factors and the evidence of parcel size before it, Pierce County had authority to decide that parcels smaller than the typical agricultural parcel did not have "long-term commercial significance" and, therefore, did not satisfy the GMA definition of "agricultural land of long-term commercial significance." The 5-acre minimum correlates with the predominant parcel size for the county's small farms, which is between 5 and 30 acres. On this basis,

we hold that the county did not abuse its discretion by setting a 5-acre minimum on "agricultural land of long-term commercial significance" subject to development regulations conserving such properties.

¶30 Futurewise contends that because the ordinance does not mention the predominant parcel size evidence, we are limited to considering only Pierce County's stated rationale for setting the five-acre minimum—the reliability of the soil maps. We agree that, if that approach were proper, Pierce County appears to have based the parcel size minimum solely on its erroneous interpretation of soil mapping data. The ordinance explicitly mentions soil mapping accuracy in conjunction with the minimum parcel size and does not discuss predominant parcel size. PCC 19A.30.070.

¶31 But our role in this appeal is not to interpret PCC 19A.30.070. Instead, our proper role is to determine whether substantial evidence supports the Board's order. In doing this, we view the administrative record in its entirety. RCW 34.05.570(3)(e); *Manke*, 91 Wn. App. 793. The ordinance is one part of the administrative record, and there is no requirement that the ordinance state a county's complete rationale for defining agricultural land of long-term significance. As such, the portion of the Council's reasoning memorialized in the statutory language is extraneous to the validity of the ordinance's limitation on its application to parcels greater than five acres. Ordinances of this type are crafted to guide future GMA decisions and are not meant to set out a council's policy reasons for enacting the ordinance.[5]

---

[5] Our analysis of legislative intent here does not conflict with our recent ruling in *Cowlitz County v. Martin*, 140 Wn. App. 171, 165 P.3d 51 (2007). In that case, Cowlitz County decided to replace and expand a culvert. Cowlitz County applied for a grant of approximately $447,000 from the salmon recovery fund and stated that its sole reason for replacing the culvert was to allow fish to pass. The county had no authority to condemn property under the salmon recovery act. But three years after receiving the grant, the county attorney sued to condemn the land around the culvert and, for the first time, articulated an additional reason for doing so: to handle storm stream flows. This court held that the county attorney could not simply articulate a new reason to condemn the property during litigation when the condemning authority, the Cowlitz County Commissioners, had not requested condemnation for that reason.

¶32 Further, the Board may reject the ordinance only if the ordinance itself is "clearly erroneous," not because one stated reason for enacting it lacks merit. RCW 36.70A.320(3); *Pub. Util. Dist. No. 1*, 121 Wn.2d at 201. Local governments shoulder " *the ultimate burden and responsibility for planning, harmonizing the planning goals of [the GMA], and implementing a county's or city's future.'* " *Manke*, 91 Wn. App. at 804 (quoting RCW 36.70A.3201). Where the resulting ordinance is supported by the record, we will not substitute our judgment for that of a county's legislative authority, nor will we reverse a Board's decision that followed a mandatory presumption of validity based on a review of the entire record.

¶33 Substantial evidence of the predominant parcel size factor supports the five-acre minimum parcel size; the Board did not err in so ruling. First, the five-acre minimum undisputedly correlated to the lesser range of predominant parcel size for small farms. Second, there is sufficient evidence that Pierce County considered predominant parcel size when setting this five-acre minimum. The memorandum upon which the Council relied notes, under "Predominant parcel size," that:

> The proposal identifies only parcels five acres or larger to be included in the RF and VF designations. The predominant

---

The case before us differs. Cowlitz County clearly expressed its legislative purpose behind replacing the culvert when it applied for a salmon recovery grant and stated that its *sole* purpose was to allow fish to pass. Here, Pierce County had before it two recommendations regarding the five-acre minimum, soil mapping reliability and predominant parcel size, and the county did not reject the later recommendation by failing to include it in the ordinance.

Further, our legislature expressly prohibits counties from mandating condemnation to achieve the salmon recovery act's goals. RCW 77.85.050. We would contravene legislative intent if we allowed counties to simply articulate another purpose for condemnation when no evidence supports the argument that the county actually contemplated that purpose. In contrast, our legislature grants counties extremely wide discretion in executing the GMA, mandates that reviewers defer to counties acting within the bounds of their discretion, and does not require that counties state their reasons for GMA decisions. Thus, we would contravene legislative intent if we second-guessed Pierce County's authority on the basis that it did not write its full rationale into its ordinance. In short, whether it is appropriate for us to accept a legislative body's later-articulated rationale for an otherwise legitimate ordinance depends on the case's specific facts and the legislature's intent for our review of the particular law at issue.

parcel size for both VF and RF designations is between 5 and 30 acres.

2 AR at 1362. Although the Council enacted the ordinance without stating the predominate parcel size factor, the county's attorney argued before the Board and this court that this factor supports the Council's decision to enact the ordinance. The record supports this claim and we agree.

¶34 We understand Futurewise's position that the parcel size evidence provides only minimal support for the five-acre minimum. But in light of the presumption of validity of the Council's designation and our legislature's intention to entrust local governments with discretion and autonomy over GMA decision making, we hold that this evidence is adequate to affirm the Board's ruling that PCC 19A-.30.070(B)(3)(a), defining "agricultural land of long-term commercial significance," is consistent with the GMA.[6]

¶35 In summary, although the five-acre minimum is not supported by the factor of soil sample accuracy, it is supported by the factor of predominant parcel size. Accord-

---

[6] The dissent disagrees with our analysis concerning predominant parcel size, reasoning that (1) the county did not consider predominant parcel size, as evidenced by the ordinance's omission of this factor, and (2) insufficient evidence supported a factual assertion that predominant parcel size was between 5 to 30 acres because "parcel" was undefined. Dissent at 220.

As discussed earlier, the presence of explicit rationales in the ordinance does not mean that the Council did not consider other factors when it set the minimum parcel size. There is no mandate that the Council explain its reasoning in full when it writes the ordinance. The "soil mapping" rationale embodied in the ordinance is superfluous. Thus, it is inappropriate for this court to usurp the Council's broad discretion in GMA matters on this basis.

As to the dissent's second rationale, the Board's reliance on predominant parcel size is unchallenged and, thus, a verity on appeal. The Board found that small size farms in Pierce County average 4.5 acres and average farm size in general is 39 acres, with a median of 20 acres. The county contends that the predominant parcel size for small Pierce County farms is 5 to 30 acres. Futurewise has never challenged the sufficiency of evidence supporting these facts, even though the numbers were cited repeatedly in briefing and oral argument. Rather, the stated Futurewise position is that *no* categorical exclusion based on parcel size is appropriate in any context. These unchallenged facts are, therefore, verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

The county has broad discretion to implement WAC 365-190-050. As the regulation does not define "parcel," the county acted within its discretion and is not mandated to explain fully its rationale in order to withstand judicial review.

ingly, we affirm the Board's ruling upholding PCC 19A.30.070(B)(3)(a)'s definition of "agricultural land of long-term commercial significance."

HUNT, J., concurs.

¶36 BRIDGEWATER, J. (concurring in part, dissenting in part) — I concur in the analysis that the Central Puget Sound Growth Management Hearings Board (Board) erred when it held that the minimum parcel size correlates to soil sample accuracy and that substantial evidence supported Pierce County's (County) setting of the parcel limit on this basis.

¶37 But I respectfully dissent from the analysis that predominant parcel size supports its five-acre minimum. Two reasons support my position:

¶38 (1) The County specifically set out the four factors it relied upon to decide the five-acre minimum parcel size, including (a) soils; (b) intensity of nearby uses; (c) pressures to urbanize; and (d) landowner intent, as reflected by the land's tax status. The County did not consider predominant size as a factor.

¶39 (2) There is insufficient evidence that the predominant parcel size was between 5 and 30 acres, as disputed by Futurewise. There are some statements, but at oral argument we discovered that we do not know the basis of what is the "parcel"—does it have a separate taxable description, can it be not contiguous with other parcels owned by the same farmer, are all tax parcels grouped together to discover the parcel size, were both of them using "tax parcels" or were they using another definition? The majority states that the "Board's reliance on predominant parcel size" is a verity. Majority at 219 n.6. But neither the County nor the Board relied upon predominant parcel size; they merely relied upon a flawed soil sample accuracy rationale, omitting any reference to "predominant parcel size." Thus, I find there is not substantial evidence to support this rationale because we do not have any definition of "parcel." The

majority also points out that Futurewise did not challenge the sufficiency of the evidence for the predominant parcel size rationale, majority at 219 n.6, but the reason for the decision was not parcel size, it was the other flawed rationale.

¶40 Therefore, because the County did not use this method, there was not an opportunity for the public to test this premise. There is no doubt that a county could use predominant size as the deciding factor, but if it proposes to do so, then the public can present evidence as to (1) what is the predominant size of a parcel and (2) what is a parcel—tax, use, etc.

¶41 I would reverse.