**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AUDREY MAE PETERSON,<br><br>               Petitioner,<br><br>v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, ADULT<br>PROTECTIVE SERVICES,<br><br>               Respondent. | No. 84709-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

HAZELRIGG, A.C.J. — Audrey Peterson appeals from a review decision and final order that determined she financially exploited a vulnerable adult. Because the review judge failed to give due regard to the administrative law judge's ability to observe the witnesses, an error of law, we reverse.

## FACTS

Audrey Peterson has been a registered nurse since 2009 and has worked in hospice care since 2013. In October 2019, Peterson was employed by Catholic Health Initiatives Franciscan Palliative and Hospice (CHI) and was responsible for assessing patients to determine hospice care eligibility. On October 5, she evaluated a patient named Reagan[1] in Reagan's home. Reagan, her husband Dean, and her daughter Krystel Hathaway were present for the assessment. As part of the intake process, Peterson asked to see all of

---

[1] Only Reagan's first name appears in this opinion to protect her identity.

No. 84709-1-I/2

Reagan's medications to document them and ensure there was at least a five-day supply of each medication in the home since another nurse would not return for a follow-up visit for five days. Hathaway asserted that while documenting medications, Peterson opened a bottle of Reagan's prescription pain medication, poured some of the pills into her hand, and put them into her laptop bag. Hathaway called CHI and reported the incident; CHI contacted Adult Protective Services (APS), a program of the Department of Social and Health Services (DSHS). APS made an initial finding that Peterson financially exploited a vulnerable adult. Peterson exercised her right to challenge the finding by timely requesting an administrative hearing.

The hearing largely consisted of a credibility battle between Peterson and Hathaway. Both testified and participated in a visual demonstration of how the parties were positioned during the purported incident in order for the Administrative Law Judge (ALJ) David Dunlap to determine the vantage points of those present. Peterson also reenacted her method of handling pill bottles to conduct a count. Erin Bush, an investigator for the Nursing Care Quality Assurance Commission (NCQAC), testified regarding her investigation of the incident. Grace Brower, an APS investigator, testified about her own investigation. In Peterson's case in chief, she called Thomas Browning and Katherine Thomas, who each detailed their positive experiences working with Peterson. ALJ Dunlap admitted and considered several exhibits during the hearing, including Brower's investigation notes and outcome report, Reagan's admission profile, notes from CHI supervisor Deborah Hagopian regarding

No. 84709-1-I/3

Hathaway's report, Bush's memo from her phone interview of Hathaway, the incident report from the Lakewood Police Department, a copy of Reagan's prescription for oxycodone,[2] the NCQAC notification that there was not substantial evidence of a violation to support any disciplinary action with regard to Peterson's nursing license, and Peterson's medical records.

After the conclusion of the hearing, ALJ Dunlap issued an initial order that found Peterson did not financially exploit Reagan and reversed the initial finding by APS. DSHS petitioned for review with the Board of Appeals. The review judge, Thomas Sturges, reversed Dunlap's initial order and affirmed the substantiated finding by APS. Peterson timely petitioned for judicial review in Thurston County Superior Court. The petition was transferred to the Court of Appeals Division Two, then to this division.

ANALYSIS

An individual may seek judicial review of an administrative decision under the Administrative Procedure Act. Ch. 34.05 RCW. The party challenging the agency action bears the burden to demonstrate the invalidity of the agency action. RCW 34.05.570(1)(a). This court will grant relief from an agency adjudicative order only if one or more of the bases set out in RCW 34.05.570(3) apply. Here, Peterson contends that the statute or rule on which the order is based violates the constitution, the agency erroneously interpreted or applied the law, the order is not supported by substantial evidence, and the order is arbitrary and capricious.

---

[2] Oxycodone is an opioid prescribed for moderate to high pain relief. It is classified as a schedule II controlled substance.

- 3 -

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84709-1-I/4

In an appeal from a substantiated finding of abuse of a vulnerable adult, an ALJ issues an initial order, subject to review by a reviewing officer. Crosswhite v. Dep't of Soc. & Health Servs., 197 Wn. App. 539, 547, 389 P.3d 731 (2017). The reviewing judge generally "shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing." RCW 34.05.464(4). This court "review[s] the review judge's final order, not the initial order entered by the ALJ." Crosswhite, 197 Wn. App. at 548.

I.      Due Regard to ALJ's Ability To Observe Witnesses

Peterson first asserts Review Judge Sturges erred as a matter of law because he failed to give due regard to ALJ Dunlap's opportunity to observe the witnesses. Both RCW 34.05.464(4) and WAC 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(1) require a reviewing judge to "give due regard" to the ALJ's ability to observe witnesses. RCW 34.05.464(4) states, "In reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses." WAC 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(1) requires that "[i]n reviewing findings of fact, the review judge must give due regard to the ALJ's opportunity to observe witnesses." The failure to give due regard to the ALJ's findings informed by their ability to observe witnesses is an error of law. Quilang v. Dep't of Soc. & Health Servs., 25 Wn. App. 2d 164, 174, 527 P.3d 73 (2022).

This court interprets statutes and regulations de novo. Yaron v. Conley, 17 Wn. App. 2d 815, 825, 488 P.3d 855 (2021). We apply the general rules of statutory construction when interpreting regulations. Id. In interpreting a statute,

- 4 -

No. 84709-1-I/5

we first look to the plain language of the statute and give meaning to each word. Smith v. Dep't of Lab. & Indus., 22 Wn. App. 2d 500, 506, 512 P.3d 566 (2022). We construe statutes so that "'no clause, sentence or word shall be superfluous, void, or insignificant.'" HomeStreet, Inc. v. Dep't of Rev., 166 Wn.2d 444, 452, 210 P.3d 297 (2009) (internal quotation marks omitted) (quoting Kasper v. City of Edmonds, 69 Wn.2d 799, 804, 420 P.2d 346 (1966)). We "'assume the Legislature meant exactly what it said and apply the statute as written.'" Id. (quoting Duke v. Boyd, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)). Where a term is not defined by statute or regulation, we may look to a dictionary definition. Samish Indian Nation v. Dep't of Licensing, 14 Wn. App. 2d 437, 442, 471 P.3d 261 (2020).

RCW 34.05.464(4) has not been amended since it was codified in 1988. WAC 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, in contrast, has been amended three times. As originally promulgated, the regulation provided for a much narrower inspection by the reviewing officer. It stated that review judges had the same decision-making authority as the ALJ only in specific types of cases, which did not include APS findings. Former WAC 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(1) (2000). In these cases, the review judge was required to "consider the ALJ's opportunity to observe the witnesses." Id. In all other cases, the review judge only had authority to change the ALJ's initial order if there were irregularities such as an abuse of discretion or misconduct, if the findings of fact were not supported by substantial evidence, if the ALJ erred as a matter of law, if the order needed to be clarified, or if the ALJ failed to make an essential finding of fact. Former WAC 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(3) (2000). Despite

- 5 -

No. 84709-1-I/6

several changes to the rule refining the scope of review, the core requirement to "consider the ALJ's opportunity to observe the witnesses" remained unchanged.[3] The current rule was overhauled in 2011, reiterating that reviewing judges had "the same decision-making authority as the ALJ," but providing for de novo review of initial orders in all cases, rather than just in specific types of cases. Wash. St. Reg. 11-04-074 (Mar. 3, 2011). However, the review judge's discretion was limited by the requirement that "the review judge must give due regard to the ALJ's opportunity to observe witnesses." WAC 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(1). This reflects an election by DSHS to broaden the authority of a reviewing judge but place a caveat on that authority. It further reflects an explicit choice by DSHS that the review judge not merely "consider" the ALJ's opportunity to observe the witness testimony, but give it "due regard." "'When the legislature uses different words in the same statute, we presume the legislature intends those words to have different meanings.'" Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 353, 340 P.3d 849 (2015) (quoting In re Pers. Restraint of Dalluge, 162 Wn.2d 814, 820, 177 P.3d 675 (2008) (Sanders, J., dissenting)).

Based on our rules of statutory interpretation, we must presume that DSHS, in amending WAC 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(1), meant something different when it

---

[3] See former WAC 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(1) (2000) (providing same decision-making authority in cases related to licensing and related fines, rate-making, and parent address disclosure); see also former WAC 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(1) (2002) (adding same decision-making authority in cases listed in former WAC 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 (2002) including, but not limited to, licensing of residential care and foster care homes, child protective services findings, and claims of good cause for failure to cooperate with the division of child support); see also former WAC 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(2) (2008) (adding same decision-making authority to review of initial orders in cases involving medical assistance and social security eligibility, temporary assistance to needy families, working connections child care, and adoption support services).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

altered the requirement that the review judge "give due regard" to the ALJ's opportunity to observe witnesses rather than simply "consider" it. Consider is not defined by regulation. The dictionary definition of "consider" includes "to reflect on : think about with a degree of care or caution . . . to think of, regard, or treat in an attentive, solicitous, or kindly way . . . REFLECT, DELIBERATE, PONDER." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 483 (2002). As such, DSHS must have intended for "due regard" to mean something different from this definition. We must additionally assume that DSHS and the legislature meant what they said in requiring that a review judge "give due regard to the ALJ's opportunity to observe witnesses." We give meaning to each of the words in the regulation and statute, including due regard. See HomeStreet, 166 Wn.2d at 452. "Due regard" is not defined by statute or regulation. The dictionary definition of "due" includes "owed or owing as a necessity," "requisite or appropriate in accordance with accepted notions of what is right, reasonable, fitting, or necessary," and "satisfying or capable of satisfying a need, requirement, obligation, or duty." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 699 (2002). The definition of "regard" as a noun includes "attention of the mind with a feeling of interest : attention or respect as shown in action or conduct : CONSIDERATION, HEED, CONCERN." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1911 (2002). Under the plain language of RCW 34.05.464(4) and WAC 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(1), the reviewing officer must give the requisite or appropriate attention or respect to the ALJ's ability to observe witnesses, as should be illustrated by their action or conduct. The level of attention or respect given must

- 7 -

be in accordance with accepted notions of what is right, reasonable, fitting, or necessary. This plain language contemplates that the attention or respect given will depend on the circumstances of the case and will be shown by the action or conduct of the reviewing judge.

One way that a review judge may demonstrate they have given the appropriate attention or respect to the ALJ's ability to observe witnesses is by providing an adequate explanation where the review judge disagrees with the ALJ's findings of fact. Division Three of this court has held that if the reviewing officer departs from the ALJ's findings of fact, they "'must explain why.'" Crosswhite, 197 Wn. App. at 561 (quoting ITT Cont'l Baking Co. v. Fed. Trade Comm'n, 532 F.2d 207, 219 (2d Cir. 1976)). In addition to demonstrating that the reviewing officer has considered the ALJ's ability to observe witnesses, an adequate explanation of the reviewing judge's disagreement allows this court to review the record and determine whether the findings are supported by substantial evidence. See Int'l Bhd. of Teamsters, Loc. No. 310 v. Nat'l Lab. Rels. Bd., 190 U.S. App. D.C. 279, 284, 587 F.2d 1176, 1181 (1978).[4] This is particularly crucial where the review judge departs from findings "involving a determination of whether a witness's testimony as to an alleged fact is true." Quilang, 25 Wn. App. 2d at 179.

In Quilang, Division Three of this court held that where a reviewing judge stated "that he 'has given due regard to the ALJ's opportunity to observe the witnesses,'" but offered "no explanation why he has departed from the ALJ's

---

[4] While federal law is not binding upon this court, we may treat federal authority that interprets federal counterparts of state law as persuasive authority. Jensen v. Misner, 1 Wn. App. 2d 835, 843, 407 P.3d 1183 (2017).

primary inferences," the review judge erred as a matter of law. Id. Similarly, in Crosswhite, the review judge erred when they "failed to explain why the ALJ's assessment of the witness' testimony on this primary issue . . . should be rejected, other than to make different, unsupported findings." 197 Wn. App. at 567. We adopt the reasoning of Division Three in Crosswhite and Quilang and agree that, to effectuate meaningful appellate review, an administrative reviewing judge must explain their disagreement when they reverse an ALJ's finding of fact.

Where a reviewing officer reverses an ALJ's finding of fact, "'we examine the disagreement with a gimlet eye,'" conducting a "more 'searching'" review. Crosswhite, 197 Wn. App. at 560 (quoting Aggregate Indus. v. Nat'l Lab. Rels. Bd., 423 U.S. App. D.C. 84, 89, 824 F.3d 1095, 1100 (2016); Plaza Auto Ctr., Inc. v. Nat'l Lab. Rels. Bd., 664 F.3d 286, 291 (9th Cir. 2011) (quoting United Steel Workers of Am. AFL-CIO-CLC v. Nat'l Lab. Rels. Bd., 482 F.3d 1112, 1117 (9th Cir. 2007)). We examine the adequacy of the review judge's explanation for their disagreement to confirm that they have given appropriate respect to the ALJ's ability to observe witnesses. This is consistent with the general rule that we review an error of law de novo. Envolve Pharmacy Sols., Inc. v. Dep't of Rev., 25 Wn. App. 2d 699, 710, 524 P.3d 1066 (2023). Further, the explanation must be supported by substantial evidence in the record consistent with our general requirement that an agency order be supported by substantial evidence, such that a fair-minded person would be persuaded of the correctness of the premise. Whitehall v. Emp't Sec. Dep't, 25 Wn. App. 2d 412, 421, 523 P.3d 835 (2023).

No. 84709-1-I/10

Here, Review Judge Sturges asserted that he "ha[d] given due regard to the ALJ's opportunity to observe the witnesses" and explained that he reached a different result because:

> ALJ Dunlap failed to consider, weigh, and include all of the documentary and testimonial evidence. The undersigned reviewer, therefore, does not accept the credibility determinations made in the Initial Order. In resolving the conflicting evidence, this reviewer has considered and weighed all of the evidence, including the witnesses' demeanor[5] and the statements and motivations of the testimonial witnesses and of the individuals whose comments are reflected in the exhibits.

But this explanation is not adequate. Review Judge Sturges merely disagreed with ALJ Dunlap's analysis of the facts, finding contrary inferences from the evidence. Sturges does not identify what evidence Dunlap failed to consider or the impact of that additional evidence. Further, this finding is contradicted by ALJ Dunlap's express finding that he considered and weighed all of the evidence. Review Judge Sturges also held that the initial findings of fact made by ALJ Dunlap "were incomplete, inaccurate, and included Conclusions of Law," but does not explain what findings were lacking or inaccurate, nor how the findings were inadequate. Rather, Sturges simply made contrary findings of fact based on an opposite interpretation of the evidence presented.

---

[5] It is unclear whether Sturges reviewed a video recording of the testimony or only a transcript of the hearing. Sturges stated he viewed "the record of the hearing," but also that he considered the witness' demeanor. At oral argument before this court, counsel for DSHS asserted it "seems like [Sturges] had the ability to watch" the recorded testimony, but admitted this "was not certain" based on their knowledge of the record. Wash. Ct. of Appeals oral argument, Peterson v. Dep't of Soc. & Health Servs., No. 84709-1 (July 12, 2023), at 9 min., 59 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023071101.

No recordings of live testimony appear in the record before us, despite purported transmission of the entire agency record for purposes of this appeal. Because the record does not clearly demonstrate that Sturges viewed a recording of the actual testimony, we are unpersuaded by DSHS's argument in this regard and decline to presume that Sturges examined anything more than the transcript contained in the record on appeal.

- 10 -

For example, Sturges found Dunlap's determination that Hathaway's testimony was less credible than Peterson's was based on two details in Hathaway's story that changed over time, but Sturges reasoned "these discrepancies were adequately explained by Ms. Hathaway during her testimony," and, as such, the "changing details were insufficient to cast doubt on Ms. Hathaway's testimony and failed to enhance the credibility of the Appellant's testimony." Sturges also found that Peterson was less credible because she had "a strong motivation to create a false narrative of what actually happened," while Dunlap expressly found Peterson's testimony more credible despite her interest in the proceeding because she cooperated with all investigations "and made an admission against her own interest by discussing her own physical conditions and prescriptions." This finding by ALJ Dunlap is not discussed by Review Judge Sturges.

Under RCW 34.05.464 and WAC 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, Sturges was required to show by action or conduct that he gave Dunlap's ability to observe witnesses the requisite or appropriate attention or respect in accordance with accepted notions of what is right, reasonable, fitting, or necessary. The appropriate attention or respect given needed to reflect the circumstances of the case, particularly the reality that its essence was a credibility battle between Hathaway and Peterson. This is especially true as Dunlap's assessment of credibility included the unique opportunity to view the witness testimony live, including a visual presentation by the parties to determine the ability of each witness to observe Peterson's conduct and a demonstration by Peterson of how she picked up the bottle, removed and

held the lid, and shook it to see how many pills were inside. Review Judge Sturges' general and largely unsupported explanation as to why he made contrary findings is inadequate and does not reflect an appropriate level of attention or respect given the circumstances of the case. As the reviewing officer, Sturges certainly has authority to make such contrary findings, but there must be a sufficient explanation in the record to support this disagreement such that it reflects due regard given to Dunlap's ability to observe witnesses. Sturges erred as a matter of law and Peterson is entitled to relief under RCW 34.05.570(3)(d).

The dissent complains that by adopting Division Three's "must explain" requirement when a reviewing officer departs from an ALJ's findings we are embracing "a new and different legal standard found nowhere in the APA." It faults Division Three for relying on a federal case involving a federal trade regulation that expressly contained language calling for the reviewing judge to state the "reasons or basis for its action." While it is true that ITT Continental Baking Co. v. Federal Trade Commission, involves a regulation with express language that requires reviewing judges to state their reasons for departing from an ALJ's finding, the dissent ignores the two cases cited in Crosswhite immediately after ITT Continental. There Division Three also relied on General Dynamics Corp. v. Occupational Safety & Health Review Commission, 599 F.2d 453 (1st Cir. 1979) and International Brotherhood. Crosswhite, 197 Wn. App. at 561. In each of these cases the court also imposed a requirement for an explanation of its reasoning when a reviewing court departs from an ALJ

No. 84709-1-I/13

determination.  Gen. Dynamics, 599 F.2d at 463; Int'l Bhd., 190 U.S. App. D.C. at 284.  And none of the regulations examined in these cases contained express language that imposed such a requirement.  The reasoning in both Crosswhite and Quilang is sound and facilitates meaningful review.  It is consistent with our "substantial evidence" standard of review under the APA and with the plain language of "due regard" under RCW 34.05.464(4) and WAC 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(1).  Indeed, the dissent relies on the reviewing court's explanation in reaching its conclusion that the explanation is not adequate.  According to the dissent, the explanation "tells us what we need to know."

Finally, the dissent contends that the APA confines us to only remand, rather than reverse, an agency action.  But, under the APA "a court reviewing agency action has an array of options: 'the court may (a) affirm the agency action or (b) order an agency to take action required by law, order an agency to exercise discretion required by law, set aside agency action, enjoin or stay the agency action, remand the matter for further proceedings, or enter a declaratory judgment order.'"  Rios v. Dep't of Lab. & Indus., 145 Wn.2d 483, 508, 39 P.3d 961, 974 (2002) (emphasis added) (quoting RCW 34.05.574(1)).  While the statutory preference is to "remand to the agency for modification of agency action," we need not do so when remand "is impracticable or would cause unnecessary delay."  RCW 34.05.574(1).  Here, the dissent agrees that the reviewing judge did not provide an adequate basis to depart from the ALJ's credibility findings.  Remand under these circumstances is neither practical nor efficient.  Further, the dissent's analysis in this regard is belied by extensive case

- 13 -

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

law in this state.  See, e.g., Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993) ("The WAPA allows a reviewing court to reverse an administrative decision when, inter alia: (1) the administrative decision is based on an error of law." (first emphasis added)); Nguyen v. Med. Quality Assur. Comm'n, 144 Wn.2d 516, 534, 29 P.3d 689 (2001) (noting that the court's determination on a constitutional issue "requires reversal"); Ames v. Med. Quality Assur. Comm'n, 166 Wn.2d 255, 260, 208 P.3d 549 (2009) ("Under the WAPA, a reviewing court may reverse an administrative order (1) if it is based on an error of law." (emphasis added)); Dang v. Med. Quality Assur. Comm'n., 10 Wn. App. 2d 650, 664, 450 P.3d 1189 (2019) ("Under RCW 34.05.570(3), we will reverse only if (1) the administrative decision is based on an error of law." (emphasis added)); Neravetla v. Dep't of Health, 198 Wn. App. 647, 658, 394 P.3d 1028 (2017) ("We may reverse an administrative order (1) if it is based on an error of law." (emphasis added)); Netversant Wireless Sys. v. Dep't of Lab. & Indus., 133 Wn. App. 813, 821-22, 138 P.3d 161 (2006) (reiterating that "we reverse an administrative decision only if it (1) was based on an error of law" (emphasis added)); Conway v. Dep't of Soc. & Health Servs., 131 Wn. App. 406, 414, 120 P.3d 130 (2005) ("A reviewing court may reverse an administrative decision if: (1) the agency has erroneously interpreted or applied the law." (emphasis added)); Scheeler v. Emp't Sec. Dep't, 122 Wn. App. 484, 487-88, 93 P.3d 965 (2004) ("A reviewing court may reverse an administrative decision when: '(1) the administrative decision is based on an error of law.'" (emphasis added) (quoting Tapper, 122 Wn.2d at 402)); Callecod v. Wash. State Patrol, 84 Wn. App. 663,

- 14 -

No. 84709-1-I/15

670, 929 P.2d 510 (1997) (noting that "this court may <u>reverse</u> an administrative decision only if (1) the administrative decision was based on an error of law" (emphasis added)).[6] It is clear our remedy comports with well-settled jurisprudence. Accordingly, we reverse and reinstate ALJ Dunlap's Initial Order.

Peterson raises a number of additional assignments of error, contending that ALJ Dunlap's decision was arbitrary and capricious, that the order is unsupported by substantial evidence, and that the relevant rule providing for a preponderance of the evidence standard of proof violates the constitution. However, because the first issue is dispositive, we need not reach these issues. We reverse and reinstate the Initial Order.[7]

I CONCUR:

---

[6] We constrain our citations on this issue to only those cases dating from 1988 as that is when the statute cited by the dissent was enacted.

[7] Peterson seeks attorney fees on appeal under the Equal Access to Justice Act (EAJA). LAWS OF 1995, ch. 403, § 901. The EAJA affords reasonable attorney fees unless the court finds that the action was substantially justified. RCW 4.84.350(1). For an action to be substantially justified, it must satisfy a reasonable person's judgment. <u>Silverstreak, Inc. v. Dep't of Lab. & Indus.</u>, 159 Wn.2d 868, 892, 154 P.3d 891 (2007).

The APS/DSHS actions at issue here would satisfy a reasonable person's judgment since its actions were taken in response to a complaint, and its investigation was required by statute. Furthermore, agencies "should not be chilled from investigating incidents in the future out of fear that [this court] will find its actions to be erroneous and award attorney fees." <u>Crosswhite</u>, 197 Wn. App. at 570. We decline Peterson's request for fees.

- 15 -

*Audrey Peterson v. DSHS*, No. 84709-1-I

FELDMAN, J. — The majority opinion adopts a legal standard found nowhere in the Washington Administrative Procedure Act (Washington APA), ch. 34.05 RCW, and reverses an administrative decision where the Washington APA requires us to remand to the agency for further proceedings. I respectfully dissent.

Part IV of the Washington APA governs adjudicative proceedings such as those that occurred here. It first requires a "presiding officer" or "administrative law judge" (ALJ) to conduct a hearing in which the parties may "present evidence and argument, conduct cross-examination, and submit rebuttal evidence." RCW 34.05.449(2). The ALJ then enters an "initial order," which "shall include a statement of findings and conclusions, and the reasons and basis therefor, on all the material issues of fact, law, or discretion presented on the record . . . ." RCW 34.05.461(3). If a party seeks further review, as the Department of Social and Health Services (DSHS) did here, the initial order is reviewed by a "reviewing officer," who issues a "final order" and may "exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing . . . ." RCW 34.05.464(4).

While reviewing officers have broad decision-making power, that power is subject to an important limitation: "In reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's

No. 84709-1-I/2

opportunity to observe the witnesses." *Id.* Summarizing a reviewing officer's

decision-making authority, the hearing rules that govern DSHS adjudicative

proceedings similarly state:

> Review judges review initial orders and enter final orders. The
> review judge has the same decision-making authority as the ALJ.
> The review judge considers the entire record and decides the case
> de novo (anew). In reviewing findings of fact, the review judge must
> give due regard to the ALJ's opportunity to observe witnesses.

WAC 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(1). Thus, as both RCW 34.05.464(4) and WAC 388-02-

0600(1) provide, a reviewing officer can disagree with an ALJ's findings of fact—

as the reviewing officer did here—but in doing so *must* give "due regard" to the

ALJ's opportunity to observe witnesses.

The threshold question here is what does "due regard" mean? As the

majority correctly notes, "due regard" is not defined by statute or regulation.

When a statute uses undefined terms, our Supreme Court has held that "we may

look to dictionary definitions." *Hanson v. Carmona,* 1 Wn.3d 362, 374, 525 P.3d

940 (2023). Webster's Third New International Dictionary defines "due" as "owed

or owing as a necessity," "requisite or appropriate in accordance with accepted

notions of what is right, reasonable, fitting, or necessary," and "satisfying or

capable of satisfying a need, requirement, obligation, or duty." WEBSTER'S, *supra*

at 699. And it defines "regard" as "to pay attention to : notice or remark

particularly," "to have care for : heed in conduct or practice : have respect for (as

a person) : show respect or consideration for," and "to take into consideration or

account : take account of." WEBSTER'S, *supra* at 1911. Properly interpreted, the

phrase "due regard" in RCW 34.05.464(4) and WAC 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(1) requires a

- 2 -

No. 84709-1-I/3

reviewing officer to show appropriate respect for an ALJ's findings in accordance with accepted notions of what is right, reasonable, fitting, and necessary.

Although the majority correctly recites the dictionary definitions of "due" and "regard," it ultimately embraces a new and different legal standard found nowhere in the Washington APA. Expressly adopting Division Three's reasoning in *Crosswhite v. Department of Social & Health Services*, 197 Wn. App. 539, 389 P.3d 731 (2017), and *Quilang v. Department of Social & Health Services*, 25 Wn. App. 2d 164, 527 P.3d 73 (2022), the majority holds "that a reviewing judge *must explain* their disagreement when they reverse an ALJ's finding of fact." (Emphasis added.) We are not bound by Division Three's reasoning in *Crosswhite* and *Quilang* (*see In re Pers. Restraint of Arnold,* 190 Wn.2d 136, 154, 410 P.3d 1133 (2018) (court of appeals divisions are not bound by opinions of other divisions)), and there are compelling reasons to depart from Division Three's analysis.

Critical here, Division Three did not adopt a "must explain" requirement based on the plain language of the Washington APA. Instead, Division Three took the requirement from *ITT Continental Baking Co. v. Federal Trade Commission*, 532 F.2d 207, 219 (2d Cir. 1976), which took the requirement from *Cinderella Career & Finishing Schools, Inc. v. Federal Trade Commission*, 425 F.2d 583, 589 (D.C. Cir. 1970), which interprets a regulation that governs proceedings before the Federal Trade Commission (FTC). In sharp contrast to RCW 34.05.464(4) and WAC 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(1), the FTC regulation at issue in these federal cases stated as follows:

- 3 -

No. 84709-1-I/4

> In rendering its decision (on appeal or review), the Commission will adopt, modify, or set aside the findings, conclusions, and rule or order contained in the initial decision, and *will include in the decision a statement of the reasons or basis for its action*. * * *

16 C.F.R. 3.54(b) (1969) (emphasis added).  Thus, the reason that the federal cases cited in *Crosswhite* and *Quilang* adopt a "must explain" requirement is that the regulations that governed FTC proceedings required "a statement of the reasons or basis" for the agency's decision.  There is no such requirement in RCW 34.05.464(4) and WAC 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(1).

While Washington courts can properly rely on federal case law when interpreting the Washington APA, as Division Three did in *Crosswhite* and *Quilang*, such reliance is expressly constrained by the statute.  Addressing this precise issue, the Washington APA states, "The legislature also intends that the courts should interpret provisions of this chapter consistently with decisions of other courts interpreting similar provisions of other states, the federal government, and model acts."  RCW 34.05.001.  Here, the federal decisions cited in *Crosswhite* and *Quilang* did not interpret provisions similar to the "due regard" requirement in RCW 34.05.464(4) and WAC 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(1), so we should not follow them when interpreting that statutory phrase.  And because the Washington APA does not include or even suggest a "must explain" requirement, we should not adopt one here.  *See Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) ("Courts may not read into a statute matters that are not in it and may not create legislation under the guise of interpreting a statute." (quoting *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002)).  Instead, as noted

- 4 -

previously, we should "look to dictionary definitions" to define the "due regard"

requirement as our Supreme Court has directed. *Hanson,* 1 Wn.3d at 374.

Applying the "due regard" requirement in the Washington APA rather than

the "must explain" requirement applicable to FTC proceedings, the next issue is

whether the reviewing officer here showed appropriate respect for the ALJ's

findings in accordance with accepted notions of what is right, reasonable, fitting,

and necessary. Addressing the purported deficiencies in the ALJ's analysis, the

reviewing officer stated:

> ALJ Dunlap failed to consider, weigh, and include all of the
> documentary and testimonial evidence. The undersigned reviewer,
> therefore, does not accept the credibility determinations made in
> the *Initial Order*. In resolving the conflicting evidence, this reviewer
> has considered and weighed *all of* the evidence, including the
> witnesses' demeanor and the statements and motivations of the
> testimonial witnesses and of the individuals whose comments are
> reflected in the exhibits.

While the reviewing officer's reasoning is not a model of clarity, it tells us what we

need to know: the reviewing officer concluded that the ALJ had failed to consider

all of the evidence and the reviewing officer reached a contrary conclusion based

on evidence that the ALJ had failed to consider.

To decipher the reviewing officer's reasoning, we simply need to identify

documentary or testimonial evidence that <u>is</u> discussed or cited in the reviewing

officer's final order and <u>not</u> discussed or cited in the ALJ's initial order. When we

compare the two orders, we can easily see that the reviewing officer, unlike the

ALJ, quoted and relied heavily on statements made by an investigator for the

Nursing Care Quality Assurance Commission who reviewed Peterson's pain

management plan and described her as a "functioning addict" and her

prescribing health care provider as a "frequent flyer" for improper prescribing and essentially a "dealer." Based on these assertions, the reviewing officer concluded that Peterson required "high doses of pain medication," which "makes it *more likely* that she took Reagan's Oxycodone to supplement her own supply," and that "[t]his increased motivation to acquire Reagans' [sic] Oxycodone makes [Peterson's] testimony that she didn't take the medication, less credible."

This explanation is ableist and, as such, is not an acceptable basis to reject the ALJ's credibility findings and reverse the ALJ's initial order. Succinctly stated, ableism "denies people with disabilities the right to be treated equally and with dignity . . . ." Arlene S. Kanter, *The ADA at Thirty: Its Limits and Potential*, 71 Syracuse L. Rev. 621, 629 (2021). In the context presented here—that of pain management through opioid use—this bias treats individuals who use opioids to control pain as "undeserving addicts" rather than "deserving patients." Daniel Z. Buchman, Pamela Leece, Aaron Orkin, *The Epidemic As Stigma: The Bioethics of Opioids*, 45 J.L. Med. & Ethics 614 (2017). We see this bias very clearly in the reviewing officer's unsupported conclusion that Peterson's medical need for Oxycodone to control her pain provides an "increased motivation" to steal from others and makes her "testimony that she didn't take the medication . . . less credible." The reviewing officer's analysis treats Peterson as an undeserving addict rather than a deserving patient.

Nor is there any *evidence* that Peterson's use of opioids to control her chronic pain makes her testimony that she didn't take Reagan's Oxycodone less credible, as the reviewing officer concluded. Peterson testified before the ALJ

that she currently uses opioids because she was struck in the face by a patient in 2010 and now suffers from chronic pain whenever she uses her jaw, which includes "eating, talking, smiling, singing, crying, anything." She also explained that her opioid use is governed by "a pain contract with a medical provider," that she sees her medical provider once a month, that she is subject to random urine drug screens, that she has not had problems obtaining sufficient medication to control her pain, and that both her physical exams and random urine tests have demonstrated "excellent adherence" to the prescribed use of opioid medication and "no overuse." There is no evidence in the record to conclude, as the reviewing officer did, that Peterson's prescribed opioid use makes her more likely to steal Oxycodone and lie about it.

When the reviewing officer rejected the ALJ's credibility findings and reversed the ALJ's initial order based on disability prejudice and ableism, he failed to show appropriate respect for the ALJ's findings in accordance with accepted notions of what is right, reasonable, fitting, and necessary (the meaning of "due regard") as required by RCW 34.05.464(4) and WAC 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(1). Additionally, our Supreme Court has rightly held that "a verdict affected by racism violates fundamental concepts of fairness and equal justice under law." *Henderson v. Thompson*, 200 Wn.2d 417, 421, 518 P.3d 1011 (2022). So, too, does an administrative decision affected by ableism or any other discriminatory -ism or -phobia. We must therefore grant relief from the agency order under the Washington APA, which directs us to do so where, as here, "[t]he order . . . is in violation of constitutional provisions on its face or as applied," RCW

- 7 -

No. 84709-1-I/8

34.05.570(3)(a), and "[t]he agency has erroneously interpreted or applied the law," RCW 34.05.570(3)(d). In granting relief from the agency order, the majority relies on the latter provision; I believe both apply.

Having concluded that the reviewing officer failed to comply with the "due regard" requirement in the Washington APA, the next issue before us is what remedy is required in this circumstance? This issue is governed by RCW 34.05.574—appropriately titled "Type of relief"—which sets forth the type of relief that a court can properly grant when reviewing an agency decision. The statute provides in relevant part:

> In reviewing matters within agency discretion, the court shall limit its function to assuring that the agency has exercised its discretion in accordance with law, and shall not itself undertake to exercise the discretion that the legislature has placed in the agency. The court shall remand to the agency for modification of agency action, unless remand is impracticable or would cause unnecessary delay.

RCW 34.05.574(1). As the plain language of the statute makes clear, our authority on judicial review is limited. We cannot reverse an agency determination and must instead remand the matter to the agency to issue a decision in accordance with law, including the "due regard" requirement in RCW 34.05.464(4). While there are exceptions to this rule for exigency and impracticality, neither exception applies here.

Courts applying RCW 34.05.574 have appropriately remanded matters to the responsible agency as the statute requires. In *Mills v. Western Washington University*, for example, Mills (a university professor) argued that the agency decision-maker violated the Washington APA by conducting a closed rather than an open meeting to determine whether he

- 8 -

No. 84709-1-I/9

should be disciplined for allegedly abusive behavior. 150 Wn. App. 260, 276, 208 P.3d 13 (2009), *rev'd*, 170 Wn.2d 903, 246 P.3d 1254 (2011). Addressing the proper remedy for this violation, this court stated:

> Here, the closure of Mills's disciplinary hearing was contrary to the requirements of RCW 34.05.449(5) and, thus, constituted an unlawful adjudicative procedure. Pursuant to RCW 34.05.570(3)(c), Mills is entitled to relief from the Board of Trustees' Review Decision and Final Order. That order is vacated. Because this court stands in the same position as the superior court and there is no additional relief that the superior court may give, we remand directly to the agency (i.e., the University) for a new hearing.

150 Wn. App. at 279-80. Our opinion in *Mills* thus confirms that remand for a new hearing is the proper remedy where, as in this case, an administrative decision-maker fails to issue a decision in accordance with the Washington APA's requirements.

Several other courts have similarly so ruled. In *Safeco Ins. Companies v. Meyering*, 102 Wn.2d 385, 395, 687 P.2d 195 (1984), our Supreme Court directed the trial court to remand a matter to the Commissioner of the Department of Employment Security for further action consistent with its opinion because the Commissioner's prior decision was based on a incorrect interpretation of the law. In *Boeing Co. v. Gelman*, the court concluded that the Board of Tax Appeals had failed to issue a decision in accordance with law and directed the superior court to enter an order stating, "This case is remanded to the Board of Tax Appeals and the Board is instructed to comply with the procedural requirements of WAC 456–09–925 through WAC 456–09–950." 102 Wn. App. 862, 872, 10 P.3d 475 (2000). And in *Manke Lumber Co., Inc. v.*

- 9 -

No. 84709-1-I/10

*Diehl*, the court held that the superior court lacked authority under RCW 34.05.574(1) to reverse the agency's substantive determination because such a ruling "usurped the [Western Washington Growth Management Hearings Board's] role of determining [Growth Management Act (GMA)] compliance." 91 Wn. App. 793, 810, 959 P.2d 1173 (1998). Instead, the proper remedy was to "vacate that portion of the Board's order . . . finding the County's . . . designation not in compliance with the GMA, and remand to the Board for further proceedings consistent with this opinion." *Id.* The court, in other words, rejected the remedy that the majority adopts here.

Lastly, a leading treatise on administrative law confirms the above analysis. Addressing RCW 34.05.574(1), the treatise states:

> The final sentence of RCW 34.05.574(1) deserves special mention. It directs the reviewing court to remand the matter to the agency for modification when the agency action is not being affirmed by the court. The only exceptions are when remand is impracticable or would cause unnecessary delay. This sentence recognizes the proper division of authority between the administrative agency and the court. The court acts as a check on the agency's action and does not act in place of the agency.

WASHINGTON ADMINISTRATIVE LAW PRACTICE MANUAL § 10.06[A] (2019). As this treatise confirms, our role under the Washington APA is limited. While we can properly remand a matter for further consideration where, as here, the agency fails to issue a decision in accordance with law, we cannot—and should not—usurp the agency's role by deciding an issue that has been delegated to an agency decision-maker.

In sum, I would vacate the reviewing officer's final order and remand the matter to the DSHS Board of Appeals to issue a decision in

- 10 -

No. 84709-1-I/11

accordance with law, including the "due regard" requirement in RCW 34.05.464(4) and WAC 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(1). I would also specify that the matter be decided by a different reviewing officer because the previous officer improperly prejudged the matter. *See Henderson*, 200 Wn.2d at 440 ("A case may be reassigned if 'the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion on the merits, or otherwise prejudged the issue'") (quoting *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). Because the majority's remedy does not comport with these bedrock legal principles, I respectfully dissent.

Feldman, J.